### IRENE BURKE v. THE STATE.

No. 336.　Decided February 2, 1910.

**1.—Theft from the Person—Charge of Court—Knowledge Acquired after Taking.**

Where upon trial of theft from the person without his consent and so suddenly as not to allow time to make resistance before said property was carried away, the evidence raised the issue of after acquired knowledge by the party injured, that the property was taken, the court erred in not submitting this issue and requiring an acquittal if the jury so found.

**2.—Same—Offense Defined—Knowledge after Theft—Charge of Court—Statutes Construed.**

Where upon trial of theft from the person so suddenly as not to allow time to make resistance, the evidence showed that the party injured did not discover the theft until after it was consummated, the defendant could not be convicted of this offense, but if guilty of any offense it was under another subdivision of the statutes that the theft was committed without prosecutor's knowledge or consent, and the jury should have been instructed that if knowledge of the theft did not exist in the mind of the prosecutor at the time, but came to his mind after the offense had been committed, they should find the defendant not guilty.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Taylor & Gallagher,* for appellant.—On question of the court's failure to charge on after acquired knowledge: Cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was charged by indictment filed in the District Court of McLennan County, on the 26th day of September, 1908, with theft from the person. The indictment contained two counts, one charging theft from the person of one Adams without his knowledge or consent, and the other charging theft of the same property—sixty-five dollars in money—from the person of said Adams without his consent and so suddenly as not to allow time to make resistance before said property was carried away. The second count only of the indictment was submitted to the jury. On this count appellant was convicted on April 7, 1909, and her punishment assessed at confinement in the penitentiary for a term of two years.

We do not think this judgment, under the facts and evidence, ought to be allowed to stand, nor do we believe that the charge of the court properly submitted the issue to the jury, nor do we think under any charge that could have given on this count a conviction could have been maintained. The evidence showed that Adams was a carpenter contractor, who lived in Waco; that about the 15th day of May, 1908, he was in Waco near the city hall square, and between 4th and 5th Streets on Jackson he saw appellant, who was facing him. He then makes the following statement: "As I passed her she kinder rubbed up against me, and I felt something on my pocket. I immediately felt in my pocket and my purse was in there open and the money was gone." Further, he says: "I did not see that woman get my money. I felt something push on my pocket, and I ran my hand in my pocket, and my purse was open. The purse was still in my pocket. I had one of those little leather purses with two separate compartments in it. When I felt in my pocket the purse was open. I felt something push my pocket against my hip was what made me think of my pocketbook. The purse was fastened with springs. No force was used to open the purse."

In the brief filed in behalf of appellant, among others, the following assignment is submitted: "The court further erred in its failure to tell the jury in its charge specifically that, even if they did believe that the defendant did steal the money from the prosecutor Adams, described in the count in the indictment submitted, they could not find the defendant guilty under the count submitted, if the knowledge of

the said theft came to the prosecutor Adams, either actual or circumstantial, after the offense described in the count had been committed."

Under this assignment, and having reference to the facts of the case, appellant submits these propositions:

"1.   It is necessary and the law imposes on the trial judge the duty to inform the jury pointedly, pertinently and specifically upon the principles of law by which they are to be governed in considering the verdict to be rendered under the charge in the indictment and the evidence in the case.

"2.   When the State seeks to charge the citizen with the offense of 'theft from the person' under our statute, the indictment must set out the mode or ingredient of the offense, that is, that the offense was committed 'without the knowledge' of the person from whom the property is taken, or 'so suddenly as not to allow time to make resistance before the property is carried away,' and one or the other of these modes must be alleged, and the one alleged, established by proof, and the court's charge must conform thereto.

"3.   The mode charged in this case is that of a taking 'so suddenly as not to allow time to make resistance,' etc.   The charge of the court should inform the jury that the State must under this phase show that the owner had actual knowledge of the act of taking, acquired at the very time the property was taken and not acquired thereafter.

"4.   When the State charges that the property is taken from the person 'so suddenly as not to allow time to make resistance before the property is carried away,' this phase of the statute implies that the person from whom it is taken had actual 'knowledge' of the taking at the time, and when the evidence raised the issue of knowledge after acquired the court is bound to submit the issue in his charge and inform the jury that if the owner acquired the knowledge after the property went into the hands of the accused, they should acquit of this phase of sudden taking with knowledge.

"5.   Under our statute the offense of 'theft from the person' is complete when the property alleged to have been stolen has gone into the possession of the thief, and asportation is not necessary and under the phase submitted to the jury in the indictment in this case, if the court had given the charge on knowledge acquired after the taking or at the time of the taking, the record shows that no conviction could have been had, for the reason that Adams, himself, disclaims any knowledge of the act of taking and the court, itself, recognizes the fact to be that the prosecutor had no actual knowledge of the taking by charging the jury upon the principles of circumstantial evidence.

"6.   Under our law, if the offense may be committed in various modes, the party charged with its commission is entitled to have the mode stated in the indictment and proved, and the proof must respond to the mode charged; and the charge of the court must, in its terms, distinctly set forth the law as required by the evidence and must submit to the jury every phase of the case made by the evidence and must

instruct the jury as to the law applicable to the theory within the scope of the indictment, which the evidence tends to establish, and a charge which fails to meet this requirement is erroneous."

Elaborating these propositions, they submit the following argument, which we believe contains a correct analysis and a fair statement of the law of the case:

"In the Kerry case, 17 Texas Crim. App., 178, the question of the validity of an indictment for this offense is adjudicated by this court, and it was there held that an indictment under this statute which alleges only a private stealing without setting up the ingredients, or the phase of private stealing, was not sufficient. But, that in order to make a good indictment the mode or ingredient of the offense must be set out specifically. It follows then that the State, being required to set out the mode, or manner, in which the stealing was done, must prove the same. In the case at bar the mode set out being one implying knowledge of the theft and resistance, or so suddenly done as not to admit of time for resistance, the court erred in failing to charge the jury that if the State failed to show knowledge on the part of Adams that the defendant was putting her hands in his pocket and knowledge that she was getting possession of the money, at the very time she did so, and that having such knowledge the prosecutor did make resistance; or if he did not make resistance, that the taking was so suddenly done, with his knowledge at the time, that he had no time to make resistance before the same was carried away, they, the jury, would find the defendant not guilty. These are the constituent elements of the offense charged in the count in the indictment submitted requiring affirmative proof, and it was material that they should be presented to the jury pointedly in the charge of the court.

"In the Files case, 36 Texas Crim. Rep., 206, the defendant was charged with privately stealing from the person 'without the knowledge' of the owner, and the court below charged the jury specifically that if they believed the owner knew when the defendant put his hands in his pocket and took the pocketbook into his hands, then the defendant, under said indictment, should be acquitted. And if the defendant got possession of the pocketbook before the owner knew it, the subsequent discovery of the fact of the taking would make no difference, the defendant would nevertheless be guilty; but unless the jury should find from the evidence, beyond a reasonable doubt, that the defendant did have the pocketbook in his hand before the owner knew it, they should acquit the defendant.

"This charge under the indictment in that case and under the facts adduced in evidence therein was endorsed by this court as proper, and this court says in discussing an objection to it, that the charge 'pertinently presents the issue in the case upon the very point of taking.'

"In the Green case, 28 Texas Crim. App., 493, the defendant was charged under the first phase of the statute with privately taking the property without the knowledge of the owner, and upon conviction and

appeal he objected that the evidence showed that the owner saw him taking the purse from his pocket.

"In this case the owner says: 'I felt someone touch my pocket, which contained a purse, and this attracted my attention. Looking round quickly, I saw Green's (defendant's) hand passing from my pocket to his and saw in his hand my purse containing the money.'

"Now, this court under this state of facts holds that this was a case of private stealing without the knowledge of the owner under the phase covered by the first clause of the statute, and that the same did not constitute a sudden taking under the latter clause of said statute.

"In this case this court says: 'It is to be noted that at the time Tolliver saw the defendant, he, the defendant, had already taken the purse without Tolliver's knowledge.' Now, if this was a private taking without the knowledge of the owner, it seems to us that the present case is much more so, and, owing to the fact that under the peculiar facts of our case the jury might have, and doubtless was, left in doubt as to the principles of law governing this phase of the statute; that is, the phase of sudden taking embodied in the count submitted and as the court below in his definition in the charge embodied both phases of private taking, to wit: taking without the knowledge of the owner and taking suddenly with knowledge, it becomes important and material that the jury be instructed pointedly and pertinently that if the facts in the case showed that the owner, Adams, did not know of the taking at the time it was done, they should find defendant not guilty; and that a subsequent discovery of it by the owner would make no difference. The court has failed to do this in his charge. Under the evidence in this case, the court should have charged the jury that, in order to convict, the State must show beyond a reasonable doubt that the prosecutor, Adams, knew of the taking at the time, and that knowing it, he resisted; or if he did not resist, that the taking was so suddenly done as not to allow time to make resistance. And the court should have charged, as part of the law of this case, under the facts, specifically, that if knowledge of the theft did not exist in the mind of the prosecutor at the time, but came to his knowledge after the offense had been committed, they should find the defendant not guilty. Under our view of the law, as applied to the facts in this case, the court committed an error in the first place in his charge defining the offense in setting out both phases of the statute, when the jury had only to do with the second phase embodied in the second count in the indictment, and when the court was only submitting one phase, that of sudden taking; and this error is emphasized when the court falls short in his charge by failing to give the necessary ingredients going to make up the offense submitted.

"We would respectfully call the court's attention to a charge given by Judge Gustave Cook in Flynn v. State, 42 Texas, 301. It will be seen by an examination of this case that this court sets out this charge in full 'as being in its pointed application to the facts, in contrast

with a practice, which this court has condemned, of charging in the language of the Code.'

"In this Flynn case, Judge Cook takes up the case that he is trying and gives a specific charge according to the evidence of that case, and we make this the basis of the two assignments of error we now have under discussion.

"It is true in the case at bar, the lower court, in a general way, in his charge goes on to define both phases of theft from the person, and then, in a general way, goes on to make a general application of the law of sudden taking. But he never, in any way in his charge gives a 'clear, concise statement of the law as applicable to the phase in the case on trial at the time.' He fails to direct the minds of the jurors to the law of the case on trial as applied to the facts in evidence in this particular case.

"The court will note that in the Flynn case this court held that there was a private taking in evidence 'without the knowledge' of the owner, and we would especially call this court's attention to the fact, as stated in that case, that the owner 'felt a hand in his pocket and turning immediately, found the defendant (Flynn) with his hand on my (his) pocketbook,' and 'Flynn had pulled it out from the bottom of his (Walch's) pocket, but had not taken it entirely out of the pocket, it being half in, half out of my pocket,' and 'witness asked Flynn what he was doing,' and Flynn replied, 'Trying to get out of the crowd.' The pocketbook never left witness' person. He did not 'grab' the man—could have done so but did not think of it.

"Now, if this constitutes a private taking, when under the evidence it seems that the thief was almost caught in the very act itself, the one at bar, in which the owner felt something push on his pocket, and after the pushing was done the owner felt in his pocket and found his purse had been opened and the money missing, and thereafter grabbed the woman and gave the alarm; and in describing the occurrence, testifying himself: 'I did not see that woman get my money. I felt something push on my pocket and I ran my hand in my pocket and my purse was open,' is about as complete a case under the law of private taking without knowledge and consent of the owner as we can imagine, and the jury should most certainly have had the law given to them in the case charged applicable to the facts in evidence and the same has not been done in this case."

We adopt the statement of the matter submitted above as the opinion of the court, and for the reason that the charge of the court, in the respect complained of, is erroneous, and that the verdict is unsupported by the evidence, the judgment of conviction is reversed and the cause is remanded.

*Reversed and remanded.*