351 So.2d 371 (1977)
CRUISING WORLD, INC., a Florida Corporation, Appellant,
v.
Fred W. WESTERMEYER, D/B/a Sunset Marine and John R. Munz and Mab Wreford, Appellees.
No. 77-276.
District Court of Appeal of Florida, Second District.
October 26, 1977.
Rehearing Denied November 10, 1977.
*372 Donald Wm. Giffin, St. Petersburg and J. Hardin Peterson, Jr. of Peterson, Myers, Curtis, Craig & Crews, Lakeland, for appellant.
F. Wallace Pope, Jr. of Johnson, Blakely, Pope & Bokor, P.A., Clearwater, for appellee Westermeyer.
RYDER, Judge.
John R. Munz and Mab Wreford own all the stock in Master Marine, Inc., and that corporation's major asset is certain waterfront real property utilized as a marina in Pinellas County. Munz is also the president of Master Marine, Inc.
Fred W. Westermeyer, d/b/a Sunset Marine, is in the business of building and repairing boats.
Early in 1972, Master Marine, acting through Munz, and Westermeyer entered into an oral lease of the waterfront marina property owned by Master Marine, Inc. On July 2, 1973 Master Marine, Inc. as lessor and Westermeyer, d/b/a Sunset Marine, as lessee entered into a four year written lease of the same property. Paragraph 11 of that lease states, in part, that, "... Lessee [Westermeyer] shall have an option during the term of this lease to purchase the property at the same terms and conditions as offered by any bona fide purchaser, and ... Lessor [Master Marine] shall give the Lessee ten (10) days in which to accept or refuse the terms offered by said bona fide purchaser... ."
The real estate owned by Master Marine is adjacent to that owned by Cruising World, Inc. Early in 1976, Cruising World, first through a real estate salesman and then through its attorney, approached Munz regarding the possible purchase by Cruising World of the Master Marine marina property. During these discussions, Cruising World was informed by Westermeyer that his lease with Master Marine contained either a right of first refusal or an option to purchase the property. Cruising World's first offer for purchasing the property was rejected by Master Marine as too low in price, but the negotiations continued until Cruising World and Munz agreed upon a sale price of $220,000.00 for the real estate. Munz, thereafter, retained an attorney to review a written option proposed by Cruising World. Counsel advised Munz to restructure the sale of the real estate to a sale of all the stock in Master Marine in order to achieve federal tax benefits. Until that time, Cruising World had never expressed an interest in buying the stock of the corporation.
On July 9, 1976, Munz and Wreford individually entered into a written option granting Cruising World the right to purchase all the stock of Master Marine. Cruising World, Inc. tendered the sum of $10,000.00 to the attorney for Munz and Wreford. On July 13, 1976, Master Marine notified Westermeyer that it had granted an option to Cruising World to purchase all the stock subject to the rights of Westermeyer under Paragraph 11 of the lease. Westermeyer then on August 17, 1976 delivered to Munz's counsel a purchase option identical in substance to the Cruising World option, and made demand upon Munz and Wreford to return the deposit of the other party.
Munz and Wreford filed an interpleader complaint in the Circuit Court for Pinellas County, Cruising World and Westermeyer filed their answers to said complaint and filed cross-claims against each other, and answers and Westermeyer filed a counterclaim against Munz and Wreford.
The trial court entered final judgment denying Westermeyer's counterclaim for reformation of his lease with Master Marine; denying the cross-claim of Cruising World, Inc. against Westermeyer; and finding that appellee Westermeyer is protected by the option and right of first refusal contained in the July 2, 1973 lease and, further, finding that the option executed by Westermeyer on August 17, 1976 is superior to the option of July 9, 1976 among Cruising World, Munz and Wreford; that Cruising World has no rights under the option of July 9, 1976; and accordingly entered judgment in favor of the appellee Westermeyer and against appellant Cruising World. *373 Cruising World appeals and Westermeyer cross appeals as to other questions.
We reverse in part and affirm in part.
Shares of stock are personal property. And, it is now well settled that shares are personalty, even where the property of a corporation consists wholly or chiefly of real estate. 11 Fletcher, Corporations § 5096 (1971 rev. ed.).
The Florida Supreme Court in Damico v. State, 153 Fla. 850, 16 So.2d 43 (1944), stated through Justice Chapman in a concurring opinion, "a share of stock represents a proportionate or aliquot interest in the property of the corporation, but does not vest the owner thereof with any legal right or title to any of the property, his interest in the corporate property being equitable or of a beneficial nature. The sale or transfer of stock of the corporation does not reduce or impair the corporate assets." 16 So.2d at 45.
The Court of Civil Appeals of Texas considered almost the exact question as the instant case in McClory v. Schneider, 51 S.W.2d 738 (Tex.Civ.App. 1932) and stated in a particularly well written opinion:
"The appellee contends that a purchase of all the capital stock is tantamount to a purchase of the properties and assets. If we could approve that condition, the error would be harmless, but we do not so understand the law. A transfer of stock of a corporation or a transfer of certificates of stock which only evidenced the stock, is held not to be a transfer of the property and assets of the corporation itself. The owner of a share of stock in a corporation owns no part of the capital, and is not the owner nor entitled to the possession of any definite portion of its property or assets. Hence, the purchaser of stock in a corporation does not purchase any portion of the corporation's assets, nor is a sale of all the stock of a corporation a sale of the physical properties of the corporation." 51 S.W.2d at 741.
This proposition has been upheld in Stockton v. Lucas, 482 F.2d 979 (Em.App. 1973).
However, the most convincing case arises out of the State of New York. There an action was brought by a tenant for specific performance of an option provision in a lease giving the tenant the right of first refusal in the event of a proposed sale of the premises by the corporate landlord, which was subsequently merged into another corporation and conveyed the leased premises to that corporation. In Torrey Delivery, Inc. v. Chautauqua Truck Sales and Service, Inc., 47 A.D.2d 279, 366 N.Y.S.2d 506, at page 510 (1975), the New York Court stated,
"It has long been the law in New York that a `corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; that even complete ownership of capital stock does not operate to transfer the title to corporate property; and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property' ... Ownership of capital stock being distinct from ownership of corporate property, it follows that the sale of such stock is not a sale of corporate property."
Consequently, as the option to purchase the land between Westermeyer and Master Marine went directly to the land itself, said option did not extend to the sale of the corporation's stock. Westermeyer, however, stands in the same shoes with Cruising World as he did with Master Marine insofar as his lease is concerned.
Therefore, insofar as the sale of the corporate stock is concerned, we do reverse and remand with directions to the trial court to enter judgment in accordance with this holding.
Further, insofar as the points raised by appellee Westermeyer on cross appeal, we find no demonstrable error and affirm the trial court.
McNULTY, Acting C.J., and OTT, J., concur.